**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT GARFIELD,<br><br>              Plaintiff,<br><br>     vs.<br><br>STEEL DYNAMICS, INC.,<br><br>              Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Robert Garfield ("Plaintiff"), by his undersigned attorneys, alleges, based upon personal knowledge as to himself and his own acts and on information and belief as to all other matters which is based upon filings made by Steel Dynamics, Inc. ("Steel Dynamics" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), as follows:

## NATURE OF THE ACTION

1. On March 27, 2019, Steel Dynamics filed with the SEC a definitive proxy statement (the "Proxy Statement" or "Solicitation") with respect to an annual meeting (the "Annual Meeting') scheduled to take place on May 16, 2019. On or about April 5, 2019, Steel Dynamics furnished its stockholders with a Notice Regarding the Availability of Proxy Materials relating to the Solicitation. A true and correct copy of the Solicitation is attached hereto as Exhibit 1. The fourth proposal ("Proposal 4") contained in the Proxy Statement seeks stockholder action, by way of a vote, "[t]o approve the Amended and Restated Steel Dynamics, Inc. 2015 Equity Incentive Plan" (the "Plan").

2. The proxy rules issued by the SEC "have the force and effect of law." *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977). However, in seeking stockholder approval of Proposal 4, as alleged in greater detail below, the Company failed to comply with the disclosure requirements

of Schedule 14A promulgated under the Securities Exchange Act of 1934 (the "Exchange Act"), 17 C.F.R. § 240.14a-101 ("Schedule 14A"), which governs proxy solicitation. Specifically, Item 10(a)(1) of Schedule 14A requires, *inter alia*, that "[i]f action is to be taken with respect to any [compensation] plan pursuant to which cash or noncash compensation may be paid or distributed[,]" certain further information must be furnished. Additionally, Item 10(b)(2)(i) of Schedule 14A requires that "[w]ith respect to … any plan containing options, warrants or rights submitted for security holder action[,]" certain further information must be stated. The Plan provides for awards in the form of, *inter alia*, incentive stock options and non-statutory stock options.

3.      Proposal 4 of the Proxy Statement does not comply with the SEC's disclosure requirements for proxy statements, codified at Items 10(a)(1) and 10(b)(2)(i) of Schedule 14A. Accordingly, Plaintiff, a Steel Dynamics stockholder whose vote is being solicited through the Proxy Statement, is bringing this direct action under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and the rules and regulations of the SEC to enjoin a vote by the Company's stockholder on Proposal 4 until the defects in the Solicitation are cured.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

5.      In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

6.      Venue is proper in this District because, as allowed under Section 27(a) of the Exchange Act, this District is where the violation at issue occurred as numerous Solicitations were or will be mailed to Steel Dynamics stockholders residing in this District. Steel Dynamics also trades on the NASDAQ, which is based in New York, and hired Broadridge Investor

Communications Solutions, Inc., which is also based in New York and which maintains an office at 5 Dakota Drive, Suite 300, Lake Success, NY 11042, to assist in the distribution of proxy materials and the tabulation of proxies.

## PARTIES

7. Plaintiff, a Steel Dynamics stockholder as of March 18, 2019 (the "Record Date"), is entitled to notice of, to participate in, and to vote at the Annual Meeting.

8. Steel Dynamics, together with its subsidiaries, engages in the steel products manufacturing and metals recycling businesses in the United States and internationally. Steel Dynamics, Inc. was founded in 1993 and is headquartered in Fort Wayne, Indiana. The Company's common stock trades on the Nasdaq under the ticker "STLD" and "[o]n March 18, 2019, there were 222,931,285 shares of [its] common stock outstanding. . . . Each share is entitled to one vote on each matter properly brought before the meeting."

## WRONGFUL ACTS AND OMISSIONS

9. Steel Dynamics has scheduled its Annual Meeting for May 16, 2019, and the Record Date to vote on the proposals in the Solicitation as March 18, 2019.

10. According to the Solicitation, "**The Board of Directors Recommends a Vote 'FOR' Approval of the Amended and Restated Steel Dynamics, Inc.'s 2015 Equity Incentive Plan.**" (emphasis in original).

11. According to the Solicitation,

*Background*

Our 2015 Equity Incentive Plan (the "2015 Equity Plan") was approved by stockholders in May 2015. That Plan, around which we have developed most of our company-wide equity incentive compensation programs, has provided our Compensation Committee with a comprehensive and flexible structure that has proven to be well-suited to meet the needs of our continuously growing company. In keeping with our historically consistent

3

entrepreneurial compensation philosophy, this structure has enabled our Compensation Committee to employ a variety of largely performance-based tools, which it has utilized to translate that incentive compensation philosophy into concrete and successful incentive programs.

The Plan has worked well, and we do not seek to change it in any material respect, except that we are asking our stockholders to approve the authorization of additional shares, as described below. Accordingly, we are asking you to approve our Amended and Restated Steel Dynamics, Inc. 2015 Equity Incentive Plan (the "Plan", as hereby amended), which essentially constitutes a re-approval of our 2015 Equity Plan in its present form, but with an additional 8,000,000 fungible shares to be added to the fungible share reserve. This will enable us to administer the 2015 Equity Plan in its reconstituted and renamed form. We are not seeking to extend the term of the Plan beyond the expiration date of its original term, which will remain December 31, 2025.

By continuing to have available to the Compensation Committee the same array of equity-based incentive tools and programs it has had at its disposal, with the additional share authorization, it will be able to continue to design, implement and supervise our compensation programs, with the flexibility to adapt as conditions warrant, so as to continue to attract, motivate and retain our employees at all levels of responsibility.

### *The Proposed Amended and Restated 2015 Equity Incentive Plan*

The Board and Compensation Committee believe that to enhance long-term stockholder value we need to maintain both industry and peer group competitiveness in employee compensation, incentive and retention programs, and the purpose of the Plan is to continue to advance the interests of our stockholders by enhancing our ability to attract, retain and motivate persons across all parts of the Company, from the executive office to the shop floor, upon whom we rely to make important contributions to our Company. Consistent with our corporate culture of empowering and motivating all employees and aligning their interests with that of our stockholders, we provide them with both performance-based and other equity ownership opportunities, in order to instill in them the perspective of an entrepreneur with an equity stake in the well-being of the Company. We believe that such equity-based awards are key reasons why we continue to be one of the most cost effective and efficient operators in the metals industry.

Also, our Plan is also unusual among equity-based plans, both in its architecture and scope, in that, in connection with the Restricted Stock Units (RSU) provisions described in Section 7.7 of the Plan (as it was under the existing 2015 Equity Plan), we continue to provide regular company-wide, broadly based equity awards to all eligible employees, subject always to Compensation Committee and Board oversight and authority to either modify or eliminate that program. This program, if approved by stockholders, would be continued under the Amended and Restated 2015 Equity Incentive Plan.

### Why We Are Seeking Stockholder Approval

We are seeking approval from stockholders to add an additional 8,000,000 fungible shares to the 3,262,073 shares still remaining available for issuance under the existing 2015 Equity Plan, for a total of 11,262,073 shares available for potential issuance of awards, if earned, under the Plan. Formal approval of this Proposal No. 4 is required because under prevailing SEC and NASDAQ rules, the adoption, extension or renewal of equity-based compensation plans, whether in whole or in part, or the request to authorize additional shares for use thereunder, require stockholder approval.

12. The Solicitation states, with respect to Proposal 4, in part, that:

*The following summary description of the Amended and Restated Steel Dynamics, Inc. 2015 Equity Incentive Plan is qualified in its entirety by reference to the full text of the Plan, which is attached to this Proxy Statement as Annex A.*

*Effective Date*

*The later to occur of May 16, 2019, if approved by stockholders, or such later date, if any, as such approval is secured.*

*Shares Available for Awards*

*We are asking stockholders to approve the addition of 8,000,000 new "fungible shares," which, together with 3,262,073 fungible shares still remaining available for issuance under the existing 2015 Equity Plan, through December 31, 2018, will allow 11,262,073 shares available for awards under the Plan, through its scheduled termination date of December 31, 2025.*

*What is the Meaning of a Fungible Share Reserve?*

All award types are valued, for purposes of determining their dilutive impact on stockholders. In that regard, certain types of awards, known as "full value" awards, such as restricted and unrestricted stock awards, performance awards, deferred stock units and restricted stock units, because of their nature, are considered to be more "expensive" to stockholders, whereas certain other awards, such as stock options and stock appreciation rights, are not. Although the actual operation of the fungible share reserve is described in greater detail in Section 5 of the Plan, we believe it is appropriate and in the best interest of our stockholders, for planning purposes, to make an assumption that most of the awards will be full value awards, and, therefore, that each full value share granted will reduce the remaining unallocated share count by a ratio greater than 1:1 — more specifically, by a pre-determined factor of 2.09 for each full value share. In contrast, each share involved in the grant of stock options or stock appreciation rights will diminish the remaining share count only on a share-by-share basis.

*What Type of Awards Will Be Available under the Plan?*

The Plan empowers the Compensation Committee to grant Stock Options, Restricted Stock Awards, Unrestricted Stock Awards, Performance Awards, Stock Appreciation Rights ("SAR") Awards, Deferred Stock Unit ("DSU") Awards, and Restricted Stock Unit ("RSU") Awards, to Participants, who may include Eligible Employees (including Eligible Executives) and Eligible Directors, individually or as part of a group, each as defined in the Plan. Each of these types of award-types, together with the various current programs adopted pursuant to the provisions applicable to one or another of those award-types, are described in greater detail below.

13. Proposal 4 fails to provide legally required information because it provides insufficient information for Steel Dynamics stockholders to understand how many participants are eligible to participate in the Plan despite the fact that Item 10(a)(1) requires that:

If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

**(a)** *Plans subject to security holder action.*

**(1)** Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to

6

participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

14.     Instead of providing the "approximate number of persons in each such class" as required by Item 10(a)(1), Proposal 4 tells Steel Dynamics' stockholders the following about who may receive these awards:

*What Type of Awards Will Be Available under the Plan?*

The Plan empowers the Compensation Committee to grant Stock Options, Restricted Stock Awards, Unrestricted Stock Awards, Performance Awards, Stock Appreciation Rights ("SAR") Awards, Deferred Stock Unit ("DSU") Awards, and Restricted Stock Unit ("RSU") Awards, to Participants, who may include Eligible Employees (including Eligible Executives) and Eligible Directors, individually or as part of a group, each as defined in the Plan. Each of these types of award-types, together with the various current programs adopted pursuant to the provisions applicable to one or another of those award-types, are described in greater detail below.

*Stock Options*

Section 6 of the Plan authorizes the Committee to grant either incentive stock options or non-statutory stock options, to be evidenced by an award agreement specifying the number of shares subject to the option, in such form and containing such provisions as the Committee may deem advisable. The purchase price for shares subject to any option, whether incentive stock options or non-statutory stock options, must not be less than 100% of the fair market value of the shares as of market close on the last business day prior to the date the option is granted. All stock options are required to be settled in shares of stock.

The Plan prohibits the Board and the Committee from purchasing, canceling, terminating or re-acquiring any option for cash, from re-pricing, reducing the exercise or base price of any unexercised or unsettled option or other Award, or exchanging any previously granted option or Award for another option or Award with an exercise or base price that is less than the original exercise or base price of the outstanding option or Award, or at a time when the Fair Market Value of the underlying Common Stock subject to the option exceeds the exercise or base price thereof.

*Restricted Stock Awards*

Section 7.1 of the Plan authorizes the Committee to award, as compensation or otherwise (or sell at a purchase price determined by the Committee) shares of the Company's common stock that have either time-based, performance-based or other restrictions, including provisions requiring forfeiture and imposing restrictions upon stock transfers. The terms of Restricted Stock awards may vary from award to award, and the terms of Restricted Stock awards need not be identical. In the discretion of the Committee, awards of restricted stock may or may not provide the Participant with dividends and voting rights, subject, however, to the same restrictions.

The Committee, in respect of each grant, will determine the conditions for vesting of an award of restricted stock. In the event a recipient's continuous service with the Company terminates, the Company, if so authorized in the award, may reacquire unvested shares acquired in consideration of past services and all unvested shares of restricted stock as of the date of termination will be forfeited. If restricted stock is acquired for consideration other than prior services, the forfeiture may be accomplished by repurchasing the shares at the lesser of the original purchase price or the current fair market value.

*Unrestricted Stock Awards*

Section 7.2 of the Plan authorizes the Committee to award, as compensation or otherwise (or sell at a purchase price determined by the Committee) unrestricted shares of the Company's common stock, which shares may be entirely free of any vesting restriction but otherwise may be subject to applicable transfer restrictions required by law. Awards of unrestricted stock may be granted or sold in respect of past services or other valid consideration, or in lieu of cash compensation.

*Performance Awards*

Section 7.3 of the Plan authorizes the Committee to grant performance awards to Eligible Employees, which may be denominated or payable in cash, in shares of stock (including restricted stock and restricted stock units) or in hypothetical common stock units having a value equal to the fair market value of an identical number of shares of stock,

all such awards to be subject to the attainment of one or more specified, pre-established objective performance goals, either set forth in a specific Performance Award Agreement or otherwise set forth in a separate Performance Award program, such as but not limited to the Long-Term Incentive Program described in Section 7.3(f), described below.

A Performance Award confers on the holder the right to receive payments, in whole or in part, upon achievement of objective performance goals, during a specified performance period and subject to such terms and conditions as the Committee establishes in advance. The Committee may make Performance Awards independent of or in connection with the granting of any other award.

The Plan does not permit any performance award to be paid to any Covered Employee without satisfaction of the applicable performance goal or portion thereof, if that employee's employment is terminated for any reason other than death, disability, or pursuant to a "Change in Control Termination," meeting the "double trigger" requirements of Section 2.12 of the Plan. Following the completion of each performance period, the Committee must certify whether the performance objectives and other material terms of a performance award have been achieved. Eligible Employees who receive Performance Awards possess no rights as stockholders until such shares are actually received.

*The Company's Long-Term Incentive Compensation Program.*

Since 2012, the Committee has administered a Long-Term Incentive Compensation Program (the "LTIP") and that LTIP will continue under this Plan. Following is a summary of the LTIP. The Committee is empowered to grant Performance Awards to those Eligible Executives who are specifically identified by the Committee from time to time. The current awards involve three (3) year performance periods commencing on the first (1st) day of the first (1st) fiscal year of the applicable performance period and ending on the last day of the third (3rd) fiscal year in the applicable performance period. If earned, the performance award must be paid in shares of Common Stock.

Regarding the actual current target awards, the identification of names or categories of award recipients, the calculation of LTIP awards, and the vesting provisions,

please examine Section 7.3(f) of the actual Plan set forth in Annex A.

*Stock Appreciation Rights*

Section 7.5 of the Plan authorizes the Committee to award a stock appreciation right, which entitles the holder to receive the appreciation in the value of common stock underlying the stock appreciation right. The Committee may grant a stock appreciation right either as a standalone right or, if such right does not provide for the deferral of compensation within the meaning of Section 409A of the Code, in tandem with all or any part of the shares of common stock that may be purchased by the exercise of a stock option. Upon the exercise of a stock appreciation right, the Company will pay the amount, if any, by which the fair market value of a share of common stock on the date of exercise exceeds the stock appreciation right exercise price. In the discretion of the Committee, payment with respect to the exercise of a stock appreciation right may be made either in cash or in shares of common stock, valued at fair market value on the date of exercise. Stock appreciation rights granted in relation to a stock option may be exercisable only to the extent the stock option is exercisable and the exercise or lapse of a stock option causes an equivalent reduction in the number of tandem stock appreciation rights.

No SAR may be exercisable after the earliest of the following: the expiration of ten years after the date the SAR is granted; ninety days after the date the SAR holder's "continuous service" terminates (if termination is for any reason other than disability, death or cause); the date the SAR holder's continuous service terminates if termination is for cause, or 180 days after the date the SAR holder's continuous service terminates if termination is a result of death or disability.

A stock appreciation right may only be exercised if it becomes vested, based on the criteria established by the Committee, and they expire under the same rules applicable to options. They are also subject to the same per-person limits applicable to options.

*The Company's SARs Program*

Since 2016, the Committee has administered a SARs program for Eligible Executives. The SARs have a ten year term and a three year graduated vesting schedule, such that, one-third of shares of the Company's common stock subject to the awards will vest (become exercisable) 12 months following the date of grant, and, thereafter,

1/24th of the remaining shares subject to the awards will vest monthly in equal installments, contingent upon each NEO's continued employment with the Company on the applicable vesting date. The exercise price of the SARs was equal to 100% of the fair market value of the shares of the Company's common stock on the grant date. When exercised, the exercise price of the SAR may be paid for by the recipient either in shares of the Company's common stock, in cash or a combination thereof, following which, the Company will pay the recipient an amount at settlement only in cash, subject to mandatory tax withholdings, equal to the product of the appreciation value of the SAR multiplied by the number of exercised SARs.

*Deferred Stock Unit Awards*

Section 7.6 of the Plan authorizes the Committee to award Deferred Stock Units to Participants, in such manner and amount as it may from time to time determine. Each Deferred Stock Unit represents an unsecured and unfunded obligation of the Company to issue to the award recipient, upon the expiration of such deferral period, one share of common stock. Deferred Stock Units may be awarded without payment of cash or other consideration to the Company, and may be paid or settled in cash or in common stock as may be specified in the award agreement. A Deferred Stock Unit will be forfeited in the event that the Participant's employment with the Company or service as a director, as the case may be, is terminated for cause. Deferred Stock Units carry no voting rights with respect to the underlying shares, and no cash dividends will be paid on outstanding Deferred Stock Units. However, Deferred Stock Units will accrue "Dividend Equivalents" in additional DSUs.

*The Company's Regular Annual Awards to Eligible Directors.*

Under this Program, each Eligible Director, on June 1 of each year, is entitled to receive an award of Deferred Stock Units in an amount equal to the quotient arrived at by dividing the dollar amount of the equity portion of the Eligible Director's board service retainer for such year, currently established by the Committee at $130,000 annually (as determined from time to time by the Committee, when measured against the Company's steel industry peer group, and after consultation with the Committee's independent compensation consultant), by the closing price of the Company's Common Stock at the close of business on the last business day preceding June 1. A director may elect a deferral period, for settlement of his or her DSUs, of the first anniversary of the grant date, the fifth (5th) anniversary of the grant date or expiration of the first (1st)

anniversary following the termination of his or her service as a director of the Company.

*Restricted Stock Unit Awards*

Section 7.7 of the Plan authorizes the Committee to award Restricted Stock Units (RSUs) to eligible Participants, as compensation or otherwise. RSUs may not be sold, assigned, transferred or otherwise disposed of, pledged or hypothecated during the restricted period. The terms and conditions applicable to all RSUs need not be identical unless otherwise determined by the Committee.

Each RSU, subject to the satisfaction of any applicable service-based or performance-based conditions, will entitle the Participant to receive from the Company, upon satisfaction of the restriction, one (1) share of the Company's common stock at a specified future date established by the Committee. RSUs may be granted in consideration of services performed for or for the benefit of the Company by such Participant, without payment of cash or other consideration to the Company by the Participant. Upon delivery of the underlying share of stock at the end of the restricted period, the applicable RSU will be canceled. The Committee may permit accelerated vesting in the event of a Participant's death, disability or retirement, or in the event of a "double trigger" Change in Control Termination, as defined in the Plan; provided that, if the RSU is intended to qualify as performance-based compensation, no such accelerated vesting is permissible without satisfaction of the performance restriction, except in the case of death, disability or a Change in Control Termination. No RSU will be deemed to represent an equity security of the Company, nor will any RSU be deemed to carry any voting or dividend rights.

*The Company's Regular Annual Restricted Stock Unit Grants to Eligible Employees.*

Since inception of the Company, each Eligible Employee of the Company has been entitled to receive equity awards, in amounts determined by job position category. This company-wide, broad based equity incentive program has been central to our corporate culture of empowering and motivating all employees, from the executive office to the shop floor, aligning their interests with that of our stockholders by providing them with equity ownership opportunities in order to instill in them the perspective of an entrepreneur with an equity stake in the well-being of the Company.

Each person who is an Eligible Employee on November 1st, and each year thereafter, will receive an annual grant of RSUs on November 21. Future awards are subject to such further modification, as the Committee may from time to time determine, including the suspension, discontinuance or replacement thereof. For an explanation of the manner in which the number, value and manner of payment of the RSUs is determined, as well as the applicable restricted period, payment of the RSUs, impact of termination of employment, and dividend treatment (there are none in connection with RSUs), please refer to Section 7.7(a) of the Plan (Annex A).

15. The above excerpt from the Proxy Statement merely states categories of persons eligible for various awards under the Plan, but it does not explain how many persons are in each class.

16. Proposal 4 provides no information regarding how many participants may be awarded the compensation from the Plan that stockholders are being asked to approve.

17. As a result of the above defects, the Solicitation does not identify how many participants in each class of persons who will be eligible to participate in the Plan may be awarded the additional 8,000,000 shares of Steel Dynamics common stock reserved for issuance under the Plan (worth approximately $277 million) that stockholders are being asked to approve.

18. The Solicitation also fails to comply with Item 10(b)(2)(i) of Schedule 14A, which requires that:

With respect to any specific grant of or any plan containing options, warrants or rights submitted for security holder action, state:

(A) The title and amount of securities underlying such options, warrants or rights;

(B) The prices, expiration dates and other material conditions upon which the options, warrants or rights may be exercised;

(C) The consideration received or to be received by the registrant or subsidiary for the granting or extension of the options, warrants or rights;

(D) The market value of the securities underlying the options, warrants, or rights as of the latest practicable date; and

(E) In the case of options, the federal income tax consequences of the issuance and exercise of such options to the recipient and the registrant[.]

19. Because the Plan allows for the granting of stock options and rights, the Company must disclose, *inter alia*, and in the Solicitation, "[t]he market value of the securities underlying the options, warrants, or rights as of the latest practicable date[.]" That number is also not included in the Solicitation.

20. The preceding paragraphs state a direct claim for relief against Steel Dynamics under Section 14(a) for acting in contravention of the rules and regulations prescribed by the SEC.

21. As a result of these actions, Plaintiff will be injured. Plaintiff has no adequate remedy at law. He will suffer irreparable harm if no action is taken to prevent this harm because, in addition to being forced to vote without this information, the Plan allows for the issuance of 8,000,000 shares of common stock to be granted to an unknown number of persons who qualify as eligible.

22. If these defects are not cured, it is necessary for the Court to take action to enjoin the vote on Proposal 4 beforehand to prevent shares from being distributed to participants based on an uninformed vote that lacks proper and informed stockholder approval because unwinding awards following the Annual Meeting would be impracticable.

23. To prevent injury, injunctive relief is required in the form of the Court ordering that a supplemental proxy statement that complies with Schedule 14A, Items 10(a)(1) and 10(b)(2)(i), and which is timely furnished to stockholders.

24.    Steel Dynamics should be enjoined from presenting Proposal 4 for a stockholder vote at the Annual Meeting or certifying or otherwise accepting any vote cast in connection with Proposal 4 unless the appropriate disclosures are timely furnished.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor, and against Steel Dynamics, as follows:

(A)    A preliminary and permanent injunction, enjoining Steel Dynamics from:

i.    certifying or otherwise accepting any vote cast, by proxy or in person, in connection with Proposal 4 unless a supplemental proxy statement that complies with 17 C.F.R. § 240.14a-101, Items 10(a)(1) and 10(b)(2)(i) is timely furnished to stockholders; and

ii.    presenting Proposal 4 for a stockholder vote at the Annual Meeting unless a supplemental proxy statement that complies with 17 C.F.R. § 240.14a-101, Items 10(a)(1) and 10(b)(2)(i) is timely furnished to stockholders;

(B)    A preliminary and permanent injunction requiring Steel Dynamics to furnish a supplemental proxy statement with the information required by 17 C.F.R. § 240.14a-101, Items 10(a)(1) and 10(b)(2)(i) that is cured of material disclosure defects pursuant to Section 14(a);

(C)    Awarding Plaintiff reasonable attorney's fees and expenses incurred in bringing this action and in creating a benefit for all of Steel Dynamics' stockholders to the extent that a common benefit is conferred, and;

(D)    Granting such other and further relief as this Court may deem just and proper.

Dated: April 11, 2019

ABRAHAM, FRUCHTER &
TWERSKY, LLP

 /s/ Michael J. Klein
    Michael J. Klein
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mklein@aftlaw.com

**Attorneys for Plaintiff**